**AUSTIN STONE INDUSTRIES, Inc.,**
Appellant,

**v.**

**CAPITOL POWDER COMPANY et al.,**
Appellees.

No. 10376.

Court of Civil Appeals of Texas.

Austin.

March 28, 1956.

Rehearing Denied April 18, 1956.

**690**

Tom H. Davis, Austin, for appellant.

Tisinger & Sloan, Austin, for appellee Capitol Powder Co.

W. K. McClain, Georgetown, Otto Whittington, Bartlett, for appellee A. Hobbs.

HUGHES, Justice.

The genesis of this suit is a contract between A. Hobbs and Austin Stone Industries, Inc. whereby Hobbs agreed to "strip and move the overburden from 2 units of Austin Stone land" for a total consideration of $11,497.50.

Blasting was necessary in performing this work and the requisite materials were purchased from the Capitol Powder Company. When payment therefor was not made the Powder Company sued Stone Industries for the amount due. Stone Industries thereupon impleaded A. Hobbs alleging that he had breached the aforementioned contract and that it was entitled to damages and judgment over against Hobbs if the Powder Company obtained judgment against it.

A. Hobbs answered by alleging breach of the contract by Stone Industries and resulting damages.

A nonjury trial resulted in a take nothing judgment for Austin Stone Industries against Hobbs, a judgment for $2,801.45 in favor of Hobbs against Austin Stone Industries and a judgment in favor of Capitol Powder Company against Austin Stone Industries for $1,192.20.

Separate briefs have been filed by appellees A. Hobbs and the Capitol Powder Company. We will consider first the points made by appellant relative to the judgment in favor of the Powder Company.

Appellant's points (5 and 6) as to the merits of the Powder Company claim are that there is no evidence that the materials in question were ordered by A. Hobbs and that there are no pleadings to support evidence that other persons placed such orders with the authority of A. Hobbs.

Appellant's contention is that it came to court prepared to defend a cause of action based on allegations that the materials were ordered by A. Hobbs and by no one else and that this "fatal variance" between the pleadings and evidence took it by "complete surprise."

The pleading is that the Powder Company "at the special instance and request of one A. Hobbs, who was duly authorized in the premises by the defendant [Austin Stone Industries] plaintiff sold and delivered" certain materials at stated prices "to the defendant."

The pleading declared also upon an implied contract.

The evidence shows that all the materials were purchased from the Powder Company either by Mr. Hobbs personally or by someone authorized by him, that all such materials were delivered to A. Hobbs who signed receipts therefor and were used for the benefit of the Stone Company.

■ We are unable to find in these facts any evidence of prejudicial surprise to appellant.

■ We are also of the opinion that the pleading that A. Hobbs ordered the materials was sufficient to admit evidence that the materials were ordered by an agent of

A. Hobbs. Jackson v. Dickey, Tex.Com.App., 281 S.W. 1043.

The trial court allowed interest on the Powder Company judgment from May 10, 1954, a date some two months after the materials were sold. Appellant assigns this as error under Art. 5070, Vernon's Ann. Civ.St., which provides, in part, that interest shall be allowed "on all open accounts, from the first day of January after the same are made."

We sustain this point. The contract was oral. The fact that A. Hobbs signed receipts for the merchandise upon delivery constituted nothing more than a confirmation of the prior oral purchase agreement. Joseph Zukin of California v. Price, Tex.Civ.App.Austin, 236 S.W.2d 500.

We turn now to the appeal as it pertains to the judgment in favor of A. Hobbs.

The portion of the contract between the parties which is in dispute reads:

"Austin Stone Industries, Inc. agree to pay said sum of $11,497.50 as follows: Nine hundred ($900.00) dollars as an advance for hiring of a shovel, the receipt of which is hereby acknowledged, which said sum of $900.00 is to be a part payment and credit on the total amount of $11,497.50.

"Hobbs Oil Company, and A. Hobbs agree to pay for survey expenses and to hold Austin Stone Industries harmless from any claim by anyone that may arise during said stripping. The total amount is figured on the basis of 42 cents per cubic yard and our claim shall not exceed the total amount as specified above. Work is to begin within not more than five days from date hereof and the entire contract of operation shall not exceed seven weeks from this date. Payments to Hobbs are to be made weekly not to exceed $1,000.00 per week while actual work is being done and, if not operating, no payment for that time shall be due to said Hobbs, balance remaining on this contract shall be due and payable when the contract is complied with and all said stripping being fully completed.

"Hobbs agrees hereby to hire a Bulldozer from Austin Stone Industries, Inc. for partial work to be done and to pay thereon the sum of $120.00 per week to be credited on the said total amount."

It is undisputed that A. Hobbs did not complete the work he contracted to do. Appellant alleged that he abandoned the job when it was about one half complete and that its damages were about $8,000, being the difference between the amount the entire job would cost when complete and the contract price.

A. Hobbs alleged that under the contract he was entitled to receive $1,000 per week for seven weeks commencing within one week after February 22, 1954, when actual work was started, and that appellant knew when the contract was executed that unless such payments were timely made he, Hobbs, could not perform his contract. He then alleged that appellant after making four $1,000 payments on March 6, March 15, March 26 and April 9, (1954) appellant refused to make further payments thus breaching the contract and causing him extensive damages.

Appellant's first point is that the court erred in holding it breached the contract by not making the seven $1,000 consecutive weekly payments demanded by A. Hobbs.

The trial court construed the contract as requiring these weekly payments to be made irrespective of the amount of overburden actually removed during the preceding week.

The trial court made the following unchallenged fact findings which bear upon the construction of the contract:

"I find that Austin Stone Industries, Inc. knew at the time it entered into the contract with A. Hobbs that it would be impossible for Hobbs to meet his payrolls and operating expenses unless Austin Stone Industries, Inc. advanced the money therefor, and the provisions for the payment to Hobbs

each week of the necessary sums therefor, not to exceed $1000 each week, was inserted in said contract at the special instance of Hobbs and was expressly agreed to by said Austin Stone Industries, Inc.

"I further find that Austin Stone Industries, Inc. never made any weekly estimates of the amount of work done, and never tendered Hobbs any payments based thereon; and its later contention that the weekly payments were to be measured by the amount of work done by Hobbs each week was not made in good faith.

"I further find that Austin Stone Industries, Inc. interfered with A. Hobbs in the performance of his work under his contract by failing to advance to Hobbs each week the sum of money necessary to pay Hobbs' operating expenses as provided in the written contract."

■ It is our opinion that the contract is of such doubtful meaning in this respect that it is proper to resort to settled rules of construction to determine its true meaning. One of such rules is that the language used will be construed in the light of the facts and circumstances surrounding the parties when the contract was made. 10 Tex.Jur. p. 290. Another such rule is "that great, if not controlling, weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves." James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 561.

■ Applying these rules to the facts above noted we are of the opinion that the construction placed by the trial court upon the contract is fair and reasonable and one not inconsistent with the language used.

Appellant groups the next three points for briefing. These points relate to the measure of damages and to lack of supporting evidence.

The amount of damages awarded A. Hobbs was the cost incurred in partially performing the contract less the amount paid.

Appellant contends that this is the wrong measure of damages and that the proper measure is the reasonable value of the services rendered and that there is no or insufficient evidence to support a finding on this theory.

■ Where, as here, performance of the contract by A. Hobbs was wrongfully prevented by appellant the rule is that the contractor, Hobbs, has the election of suing on the contract or on a quantum meruit. 10 Tex.Jur., page 410 and page 445.

■ The election here was to sue for breach of the contract.

The measure of damages in such suit includes the right to recover the actual loss sustained " * * * which would be the expense incurred in the performance of the contract up to the time of its breach * *." Osage Oil and Refining Co. v. Lee Farm Oil Co., Tex.Civ.App.Amarillo, 230 S.W. 518, 520, writ ref.

The judgment of the trial court is modified to eliminate interest on the Powder Company judgment accruing prior to January 1, 1955. As so modified the judgment is affirmed.

Modified and affirmed.